UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HARVINDER SINGH DHANI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:24-cv-01405-TWP-KMB |
| | ) |
| HAMILTON COUNTY DRAINAGE BOARD, | ) |
| CHRISTINE CRULL ALTMAN, | ) |
| MARK E HEIRBRANDT, | ) |
| KENTON C. WARD, | ) |
| MICHAEL A. HOWARD, | ) |
| STEVEN C. DILLINGER, | ) |
| | ) |
| Defendants. | ) |

## ORDER ON MOTIONS FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFF'S MOTION TO STRIKE

This matter is before the Court on a First Motion for Judgment on the Pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) by Defendants Hamilton County Drainage Board ("Drainage Board"), Christine Crull Altman ("Ms. Altman"), Mark E. Heirbrandt ("Mr. Heirbrandt"), Steven C. Dillinger ("Mr. Dillinger"), Kenton C. Ward ("Mr. Ward"), and Michael A. Howard ("Mr. Howard") (collectively, "Defendants") (Filing No. 11). Also pending is a Second Motion for Judgment on the Pleadings filed by the Drainage Board (Filing No. 28), which Plaintiff opposes and has moved to strike (Filing No. 30). Plaintiff Harvinder Singh Dhani ("Mr. Dhani") initiated this action asserting constitutional violations under 42 U.S.C. § 1983 against Defendants for their handling of a drainage petition submitted by Mr. Dhani's neighbor and their subsequent removal of a berm on Mr. Dhani's property. Defendants' First Motion for Judgment on the Pleadings asserts, among other things, a qualified immunity defense for the individual defendants and that there were no constitutional rights violated. For the reasons explained in this Order,

Defendants' First Motion for Judgment on the Pleadings is **granted,** and the parties' ancillary motions are **denied**.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion for judgment on the pleadings, the Court accepts as true the factual allegations in the Amended Complaint and draws all inferences in favor of Plaintiff as the non-moving party. *See Emergency Servs. Billing Corp. v. Allstate Ins. Co.*, 668 F.3d 459, 464 (7th Cir. 2012).

Mr. Dhani is a longtime resident of Hamilton County, Indiana, having lived on his property since 1995 ([Filing No. 9 at 1](#)). The Drainage Board is a municipal entity within Hamilton County that oversees drainage systems. *Id.* at 2. Mr. Ward is the Hamilton County Surveyor who conducted investigations and provided reports to the Drainage Board about the drainage issues on Mr. Dhani's property. *Id.* ¶ 6. Mr. Howard is the former Drainage Board attorney who provided legal counsel regarding an obstruction petition filed by Mr. Dhani's neighbor. *Id.* The remaining named defendants, Ms. Altman, Mr. Heirbrandt, and Mr. Dillinger are members of the Drainage Board and were present during hearings and decision-making regarding Mr. Dhani's property. *Id.*

For the nearly three decades that Mr. Dhani has lived on his property in Hamilton County, he had never experienced flooding on his property prior to 2020 when a new neighbor moved to an adjoining property. *Id.* at 3. After the neighbor moved in, he dug a trench on or near Mr. Dhani's property, and the trench caused flooding on Mr. Dhani's property. *Id.* at 3. In 2022, Mr. Dhani proceeded with a long-planned beautification project, which included constructing a landscaped dirt berm[1] in his backyard. *Id.* ¶ 11. The berm was intended to enhance Mr. Dhani's property and provide privacy by creating a hill with trees. *Id.* ¶ 52. Although it was part of a plan developed

---

[1] In landscaping, a berm is a simple rounded mound of soil (and, sometimes, fill) built upon an otherwise level patch of land to improve the design and function of a property. https://www.thespruce.com/how-to-build-berm-4160528.

before the neighbor's trench, the berm coincidentally mitigated flooding caused by the trench. *Id.* ¶¶ 11, 23.

Shortly thereafter, the neighbor filed an Obstruction of Private Drainage Petition to the Drainage Board alleging that the berm was obstructing a natural watercourse. *Id.* ¶ 24. As part of the investigation into the obstruction, the Hamilton County Surveyor's Office, supervised by Mr. Ward, prepared a report and findings, which served as a basis for the Drainage Board's findings and decisions. *Id.* ¶¶ 24, 26. Mr. Dhani did not have an opportunity to participate in the investigation or share information about the state of the land before the man-made trench was constructed. *Id.* ¶ 25. The investigation relied heavily on aerial photos and observations made during on-site inspections, for which the neighbor was present, but Mr. Dhani was not. *Id.* ¶ 27. Many of the facts and findings in Mr. Ward's report were based off the report of one of the inspectors, who was not a registered surveyor. *Id.* Mr. Ward did not verify whether the trench existed before his neighbor's purchase of the property. *Id.* ¶ 29. The neighbor's petition centered on the claim that Mr. Dhani's berm obstructed an "open swale" and clay tile. *Id.* ¶ 33. But neither the Drainage Board nor the inspectors provided evidence of clay tile or the existence of an open swale before the neighbor's trench was constructed. *Id.* ¶¶ 33–34.

Following the report by Mr. Ward, the Drainage Board conducted a hearing on December 12, 2022, where Mr. Dhani, represented by counsel, presented evidence, including a PowerPoint presentation, photographs, history, testimony, and a letter brief explaining the unsupported nature of the neighbors' claim. *Id*. ¶ 39, (Filing No. 21-3). Mr. Dhani's previous attorney submitted a detailed legal brief to the Drainage Board setting forth reasons the neighbor's petition should be denied and explaining why Mr. Dhani's berm did not obstruct a natural watercourse (Filing No. 9 ¶ 41). During the hearing, Mr. Dhani's attorney cited to a code provision that mandates, when

3

reviewing an obstruction petition, the Drainage Board must determine that the removal will not cause unreasonable damage to the land of the respondents. Ind. Code § 36-9-27.4-14.

Ultimately, the Drainage Board granted the neighbor's petition and ordered the removal of Mr. Dhani's berm finding that it obstructed a natural watercourse (Filing No. 9 at ¶ 45). The order also mandated restoring the land to its natural state, but the decision did not require removal of the neighbor's trench. *Id.* A contractor was authorized to remove Mr. Dhani's berm and regrade the area back to its pre-berm condition. *Id.* ¶ 31. The order was issued on March 13, 2023, to Mr. Dhani's lead attorney at the time. *Id.* ¶ 55. Mr. Dhani and his attorney missed the deadline to file for judicial review of the decision but filed a petition for judicial review and for injunctive relief in June 2023, which was dismissed on June 12, 2024. *Id.* ¶ 56–57.

Mr. Dhani was given the option of removing the berm himself or having the Drainage Board remove the berm at his expense on July 12, 2024. *Id.* ¶ 57. Due to scheduling and time restraints, Mr. Dhani did not find a contractor, and the Drainage Board performed the removal on July 12, 2024, without granting Mr. Dhani his requested extension of time. *Id.* The Drainage Board expensed Mr. Dhani nearly $17,000.00 for the removal of the berm and sued in state court to collect on the unpaid balance. *Id.* ¶ 50.

In August 2024, Mr. Dhani initiated this lawsuit and subsequently filed an Amended Complaint in September 2024 (Filing No. 9). Defendants filed their Answer and the First Motion for Judgment on the Pleadings (Filing No. 11) in October 2024. The Motion was fully briefed in December 2024. Thereafter, the parties stipulated to dismiss all state law claims, and an Order of Partial Dismissal was entered in January 2025, so the Court will address only Counts I, II, and III, which are the remaining federal law claims (Filing No. 25).

4

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the parties have filed a complaint and an answer, and the pleadings are closed. Rule 12(c) motions are analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007); *Frey v. Bank One*, 91 F.3d 45, 46 (7th Cir. 1996). "Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party . . . is entitled to judgment as a matter of law." *United Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). A Court deciding a motion for judgment on the pleadings may consider only "the matters presented in the pleadings" and must consider them in the light most favorable to the nonmovant. *Id.*

The pleadings "consist of the complaint, the answer, and any instruments attached as exhibits." *Hous. Auth. Risk Retention Grp. v. Chicago Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004). "Where the plaintiff moves for judgment on the pleadings, 'the motion should not be granted unless it appears beyond doubt that the non-moving party cannot prove facts sufficient to support his position.'" *Id.* (quoting *All Am. Ins. v. Broeren Russo Const.*, 112 F. Supp. 2d 723, 728 (C.D. Ill. 2000)); *see also Redex, Inc. v. Atlanta Film Converting Co.*, No. 87 C 3508, 1988 WL 9075, at *1 (N.D. Ill. Feb. 2, 1988) ("[W]hen a plaintiff moves for judgment on the pleadings, we rely only on the facts alleged in the complaint and admitted in defendant's answer."). However, the Court need not accept as true any legal assertions. *Bishop v. Air Line Pilots Ass'n, Int'l*, 900 F.3d 388, 397 (7th Cir. 2018). The Court is also "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989).

## III. DISCUSSION

Mr. Dhani's three remaining claims against Defendants are: (Count 1) Violation of Procedural Due Process under 42 U.S.C. § 1983; (Count II) Violation of Substantive Due Process under 42 U.S.C. § 1983; and (Count III) Unconstitutional Taking of Property Without Just Compensation under 42 U.S.C. § 1983 in violation of the Fifth and Fourteenth Amendments (Filing No. 9). Defendants seek a judgment on the pleadings, asserting that Mr. Dhani's constitutional rights were not violated and that qualified immunity protects them (Filing No. 12 at 2). Mr. Dhani responds that Defendants are not shielded by qualified immunity because they violated constitutional principles when they disregarded procedural safeguards, ignored statutory mandates, and engaged in arbitrary and capricious conduct resulting in damage to his property (Filing No. 21).

Each party filed ancillary Motions after the First Motion for Judgment on the Pleadings was fully briefed. The Court will first address the ancillary Motions and then turn to the First Motion for Judgment on the Pleadings.

### A. ANCILLARY MOTIONS

Defendants filed a Notice of Supplemental Authority (Filing No. 26), and Mr. Dhani filed a response to Defendants' Notice (Filing No. 27). Though the Court is capable of finding relevant caselaw, a party is permitted to direct the Court to potentially helpful authority that arose after the close of briefing—but it may only be used to supplement briefing. *See Carroll v. BMW of North Am., LLC*, 553 F.Supp.3d 588, 605 (S.D. Ind. 2021); *Doe v. Upperline Health, Inc.*, No. 23-CV-01261, 2024 WL 4133985, at *1 (S.D. Ind. May 21, 2024). So, the Court may consider the supplemental authority provided in the Notice. However, a response to the Notice was not permitted, and Mr. Dhani did not request leave to file a response. Further, in his response, Mr. Dhani added factual allegations not in the Amended Complaint. A response cannot be used to

amend a complaint. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) The Court **disregards** Mr. Dhani's response to Defendants' Notice of Supplemental Authority (Filing No. 27).

Mr. Dhani effectively invited the Second Motion for Judgment on the Pleadings with the new allegations added in his response, so the Court **denies** Mr. Dhani's Motion to Strike (Filing No. 30). The Court also **denies** Defendants' Second Motion for Judgment on the Pleadings, which addresses the new *Monell* claim asserted by Mr. Dhani in his response (Filing No. 28).

**B.      PROCEDURAL DUE PROCESS CLAIM**

Mr. Dhani alleges Defendants, acting under color of state law, failed to provide him with a fair and impartial hearing and deprived him of his property rights in violation of the Fourteenth Amendment (Filing No. 9 ¶¶ 73–74).

The Due Process Clause of the Fourteenth Amendment forbids a state from depriving any person of "life, liberty, or property, without due process of law." U.S. Const, amend. XIV, § 1. "An essential component of a procedural due process claim is a protected property or liberty interest." *Minch v. City of Chi.*, 486 F.3d 294, 302 (7th Cir. 2007). "If the plaintiffs can establish such a loss, we then must determine what process was due regarding that loss." *Belcher v. Norton*, 497 F.3d 742, 750 (7th Cir. 2007). In analyzing due process claims, the Court's inquiry involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir. 2005).

There is clearly a property interest that has been interfered with by the State, Mr. Dhani's berm was removed from his land after the adjudication of a petition to the Drainage Board. To survive Defendants' Motion for Judgment on the Pleadings, Mr. Dhani's Amended Complaint must

allege that Defendants deprived him of this interest without due process. The Court finds it does not.

The fundamental requirement of due process is the opportunity to be heard "'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "The basic rights guaranteed by constitutional due process are notice of the intended adverse government action and an opportunity to be heard in response, although more elaborate procedural rights—such as the rights to present evidence, to confront adverse witnesses, and to be represented by counsel—may apply in cases in which vital private interests are at risk." *Simpson v. Brown Cnty.*, 860 F.3d 1001, 1006 (7th Cir. 2017) (citing *Goldberg v. Kelly*, 397 U.S. 254 (1970)).

Mr. Dhani urges the Court to use the three-part *Mathews* balancing test to determine the adequacy of the procedural process (Filing No. 21 at 6). However, in *Mathews*, the Supreme Court held that the plaintiff was *not* entitled to an evidentiary hearing prior to the termination of Social Security disability payments. 424 U.S. at 349. Mr. Dhani already received a procedural right before the Drainage Board issued an order. The Drainage Board not only provided Mr. Dhani the "basic" procedural rights (*e.g.*, notice and an opportunity to be heard), but also "more elaborate" procedural rights—the right to present evidence and the right to be represented by counsel at the December 2022 hearing. These procedural rights were all afforded to Mr. Dhani before he was deprived of his property interest. After the hearing, there were additional procedural rights afforded to Mr. Dhani through the judicial review process. Unfortunately for Mr. Dhani, he and his attorney missed the deadline to file for judicial review of the decision, and because his filings were untimely, the state court dismissed his case. Regardless, whether or not he properly availed himself of the remedies is immaterial to this analysis.

Mr. Dhani claims evidence was disregarded or not considered, and the process was "fundamentally flawed." (Filing No. 21 at 7). He argues that the Drainage Board should have had safeguards in place, such as accepting his letter brief, consulting with Mr. Dhani during the investigations, or reviewing historical evidence, which would have significantly reduced the risk of errors in the process. *Id.* He further argues that the Drainage Board's failure to consider the unreasonable damage, as required by Indiana Code § 36-9-27.4-14, demonstrates procedural deficiencies. *Id.* at 8.

While a bi-partisan investigation of the property would have been preferable, due process does not require a pre-deprivation, pre-hearing investigation at all. Due process also does not require that the letter submitted prior to the hearing be accepted as part of the record. Mr. Dhani, while represented by counsel, had an evidentiary hearing prior to the adjudication of the petition. The evidence included in the letter could also have been included in the hearing PowerPoint along with historical evidence.

Mr. Dhani alleges that his hearing was not fair and impartial because Defendants favored testimony from the new neighbor and they did not give weight to the historical timeline of flooding (Filing No. 9 ¶ 74). Just because Mr. Dhani does not agree with the weight the Drainage Board gave to his testimony and evidence and does not agree with the outcome does not mean that the process was flawed. The due process clause does not guarantee a particular result; "the federal entitlement is to process, not to a favorable outcome." *Simmons v. Gillespie*, 712 F.3d 1041, 1044 (7th Cir. 2013); *see also Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 321, 105 S. Ct. 3180, 87 L. Ed. 2d 220 (1985) ("[T]he fundamental fairness of a particular procedure does not turn on the result obtained in any individual case . . . .").

9

Mr. Dhani's argument that the Drainage Board "ignored the statutory requirement of Ind. Code § 36-9-27.4-14 to deny petitions that would cause 'unreasonable damage'" is also unpersuasive (Filing No. 21 at 10). While the Court must view the allegations most favorably to Mr. Dhani, it need not assign any weight to unsupported conclusions of law or accept as true any legal assertions. Mr. Dhani's Amended Complaint contains many such legal assertions (*i.e.*, "Defendants acted with reckless disregard for Plaintiff's procedural rights, resulting in unfair treatment."), which the Court need not consider (Filing No. 9 at 27). The Court need not accept the conclusory allegation that the Drainage Board ignored a statutory requirement. The Drainage Board has the discretion to grant or deny the petition based on its findings in a hearing. The statute mandates that the Drainage Board find for the petitioner if after the hearing, it finds that:

> **(1)** the obstruction of a drain or a natural surface watercourse that is alleged in the petition exists; and
> **(2)** the removal of the obstruction will:
>     **(A)** promote better drainage of the petitioner's land; and
>     **(B)** not cause unreasonable damage to the land of the respondents;

Ind. Code 36-9-27.4-14. It is rational for the Drainage Board to find, after its hearing, that removing the obstruction and regrading the area back to "pre-berm condition" would not cause unreasonable damage to Mr. Dhani's land. That Mr. Dhani did not like the result does not mean that the Drainage Board ignored statutory requirements. Contrary to Mr. Dhani's assertion that the law requires "focusing" on the potential damages to Mr. Dhani's land (Filing No. 9 ¶ 44), the statute also requires the Drainage Board consider the impact on the petitioner's drainage.

Mr. Dhani cannot establish a procedural due process violation because pre-deprivation, Defendants not only afforded him an opportunity to be heard at a meaningful time and in a meaningful manner, but they also provided more elaborate safeguards.

C. **SUBSTANTIVE DUE PROCESS**

Even if the process were fair, the government action could still be barred through the substantive due process component of the Fourteenth Amendment, which "bars certain government actions regardless of the fairness of the procedures used to implement them." *Wudtke v. Davel*, 128 F.3d 1057, 1062 (7th Cir. 1997). Mr. Dhani alleges that the Drainage Board's actions amount to a substantive due process violation. Specifically, he argues that it accepted a "fraudulent petition" and caused unreasonable damage to his property by ordering the removal of the berm (Filing No. 9 at 27–28). He alleges the actions were arbitrary, capricious, an abuse of power, fundamentally unfair, and shocking to the conscience. *Id.* ¶ 79. Defendants argue that there is no conscious-shocking conduct, no fundamental rights at stake, no arbitrary or irrational conduct so there is no substantive due process.

The United States Supreme Court has indicated that the Fifth Amendment should be the guide for analyzing these claims rather than the "more generalized" notion of due process. *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 721 (2010) ("The problem with using substantive due process to do the work of the Takings Clause is that we have held it cannot be done.") (citation modified). But for the sake of thoroughness, the Court will address the sufficiency of the Fourteenth Amendment substantive due process argument. Mr. Dhani does not allege conduct by Defendants that rises to the level of a substantive due process violation. Conduct "shocking to the conscience" such that it violates substantive due process exists in only the most "egregious" of circumstances and is reserved for "truly horrendous situations." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). As noted by the Defendants, some examples of conscience-shocking conduct include: stomach pumping, paddling a student, and intentionally destroying an inmate's property, *Daniels v. Williams*, 474 U.S. 327, 331 (1986); rape committed by police officer, *Alexander v. DeAngelo*, 329 F.3d 912, 916 (7th Cir. 2003); sheriff

11

disciplined employees by pointing a loaded firearm and threatening to kill them, *Hawkins v. Holloway*, 316 F.3d 777, 787 (8th Cir. 2003). The Drainage Board's removal of Mr. Dhani's constructed berm pursuant to a valid order does not rise to the level of a substantive due process violation.

**D.     TAKINGS CLAUSE**

The Takings Clause of the Fifth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. To assert a takings claim under the Fifth Amendment, Mr. Dhani must allege "(1) that the governmental entity 'took' his property, either through a physical taking or through unduly onerous regulations; (2) that the taking was for a public use; and (3) that, no matter what type of property (real or personal) was taken, the government has not paid just compensation." *Conyers v. City of Chicago*, 10 F.4th 704, 710–11 (7th Cir. 2021).

Mr. Dhani alleges a regulatory taking for the first time in his response (Filing No. 21 at 6). To qualify as a regulatory taking, the measure must place such onerous restrictions on land as to render it "useless." *Muscarello v. Ogle Cty. Bd. Of Comm'rs*, 610 F.3d 416, 421 (7th Cir. 2010). There are allegations of the economic impact on the land, but they certainly do not rise to the level of denying Mr. Dhani "all economically beneficial or productive use of the land." *Id.*

The Court also concludes that Mr. Dhani fails to allege that his protected property was turned into something for public use, as required by the takings clause. *Rev v. Town of Georgetown*, No. 14-cv-00004, 2016 WL 7117181, at *4 (S.D. Ind. Dec. 7, 2016). Rather, Mr. Dhani's complaint alleges that the Drainage Board's actions "not undertaken for any legitimate public use or purpose

but instead served the interests of a private individual." Filing No. 9 at ¶ 85. Without a taking for public use, Mr. Dhani's takings claim fails.

### E.     **QUALIFIED IMMUNITY DEFENSE AND MUNICIPAL LIABILITY**

Defendants assert that the five individuals being sued in their individual capacity are entitled to qualified immunity against the Fifth and Fourteenth Amendment claims asserted by Mr. Dhani (Filing No. 12). Specifically, they argue that the individual defendants did not violate Mr. Dhani's rights, but if they did, those rights were not clearly established, so the individual defendants are entitled to qualified immunity. *Id.* at 8. Mr. Dhani responds that reasonable public officials should have known that "disregarding procedural safeguards, arbitrarily depriving property rights, and endorsing a private party's trespass harming one's property rights violated constitutional principles." (Filing No. 21 at 5). Mr. Dhani cites two cases holding that qualified immunity does not protect officials who violate clearly established rights, but he does not provide cases analogous to Defendants' conduct here. (Filing No. 21 at 6) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The United States Supreme Court has held that if no constitutional right was violated, there is no need for further inquiry. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Because the Court finds that Defendants did not violate Mr. Dhani's constitutional rights, there is no need for additional inquiry into the qualified immunity defense for the individual defendants. Also, Mr. Dhani did not meet his burden that there is a clearly established right. A right is "clearly established" when it is "'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Lovett v. Herbert*, 907 F.3d 986, 992 (7th Cir. 2018) (citing *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). He provides no analogous cases holding that the conduct here constitutes

13

a violation of the right at issue, and the officials' conduct here is not so "egregious" that it is obviously a violation. *Mullenix*, 577 U.S. at 12; *Lovett*, 907 F.3d at 992 (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 767).

Similarly, an entity "cannot be liable under *Monell* when there is no underlying constitutional violation by" one of its employees. *Gaetjens v. City of Loves Park*, 4 F.4th 487, 495 (7th Cir. 2021) (internal quotation omitted). Even with an underlying constitutional violation, a "municipality can be liable under § 1983 only 'when execution of a government's policy or custom . . . inflicts the [constitutional] injury.'" *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). The three avenues a plaintiff must proceed under *Monell* are "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Est. of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007) (citation omitted). The Amended Complaint does not sufficiently allege that the Drainage Board had an express policy, a custom or practice, or a person with final policymaking authority, so Mr. Dhani does not adequately allege municipal liability.

F.  **LEAVE TO AMEND**

Defendants argue that Mr. Dhani should not have another opportunity to amend his complaint because he has previously amended his complaint, "all factual allegations are now on the table," and "there is nothing else that Dhani could adduce to make any claims plausible." (Filing No. 12 at 29). Leave to amend a complaint should "be freely given when justice so requires." Fed. R. Civ. P. 15(a). Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a

motion to dismiss. *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 & n. 3 (7th Cir. 2004). That leave be "freely given" is especially advisable when such permission is sought after the dismissal of the first complaint. *Id.* at 687.

Here, Mr. Dhani has already amended his Complaint once, and he did not request leave to amend, nor did he respond to Defendants' argument on this point. Based on its analysis of the claims raised in the Amended Complaint, and Mr. Dhani's silence, the Court finds that further opportunities to amend would be futile. "An amendment is futile if the amended complaint would not survive a motion for summary judgment." *King ex rel. King v. E. St. Louis Sch. Dist.* 189, 496 F.3d 812, 819 (7th Cir. 2007). Accordingly, the Court will not grant Mr. Dhani another opportunity to amend his Complaint.

## IV.   CONCLUSION

For the foregoing reasons explained above, the Court finds no taking and no violation of substantive or procedural due process, and Defendants' First Motion for Judgment on the Pleadings ([Filing No. 11](Filing No. 11)), is **GRANTED**. Mr. Dhani's Motion to Strike ([Filing No. 30](Filing No. 30)) is **DENIED**; and Defendants' Second Motion for Judgment on the Pleadings ([Filing No. 28](Filing No. 28)), is **DENIED**. Plaintiff Harvinder Singh Dhani's claims are **DISMISSED** with prejudice, as no amount of revision could cure their legal deficiencies.

Final judgment will issue under separate order.

**SO ORDERED.**

Date:   8/27/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Jasbir Singh Dhani
Dhani Law LLC (Law Offices of Jasbir Dhani)
josh@dhanilaw.com

Adam Scott Willfond
Hamilton County Legal Department
adam.willfond@hamiltoncounty.in.gov